**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ADECCO USA, INC. and ADO STAFFING, INC.,**

                                        **Plaintiffs,**

          **vs.**                                                    **6:20-CV-744**
                                                                     **(MAD/TWD)**

**STAFFWORKS, INC., ANITA VITULLO,**
**KAREN WALSER, VICKI RODABAUGH,**
**DEBROAH ROHDE, MAURICA GLORIA,**
**BRIANNA FLINT, TAYLER FRAVEL,**
**KAREN STANDFORD, and SHELLY KRANZ,**

                                        **Defendants.**

_____

**APPEARANCES:**                                    **OF COUNSEL:**

**GORDON & REES LLP -**                          **JOHN TYLER MILLS, ESQ.**
**NEW YORK OFFICE**
1 Battery Park Plaza, 28th Floor
New York, New York 10004
Attorneys for Plaintiffs

**GORDON REES SCULLY**                          **TYLER TARNEY, ESQ.**
**MANSUKHANI LLP**
41 South High Street
Suite 2495
Columbus, Ohio 43215
Attorneys for Plaintiffs

**PHILLIPS LYTLE LLP -**                         **PRESTON L. ZARLOCK, ESQ.**
**BUFFALO OFFICE**                                **JOSHUA S. GLASGOW, ESQ.**
125 Main Street
Buffalo, New York 12203
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs commenced this action alleging various violations of state and federal laws against Defendants Staffworks, Inc. and Anita Vitullo, and Defendants Karen Walser, Vicki Rodabaugh, Deborah Rohde, Maurica Gloria, Brianna Flint, Tayler Fravel, and Karen Standford (the "Former Employees"). *See* Dkt. No. 1 at 1. The complaint alleges breach of contract, tortious interference with contract, tortious interference with business relationships/prospective economic advantage, actual and threatened trade secret misappropriation under federal and state law, conversion, and trademark infringement and unfair competition under the Lanham Act. *See id.* at ¶¶ 1, 111-161. On July 2, 2020, Plaintiffs filed a motion for a temporary restraining order or preliminary injunction. *See* Dkt. No. 13. The Court denied Plaintiffs' motion for a temporary restraining order and scheduled an evidentiary hearing. *See* Dkt. No. 14. Following a three-day evidentiary hearing, the Court granted Plaintiffs' motion for a preliminary injunction in part. *See* Dkt. No. 71. Plaintiffs then filed a motion for contempt and sanctions, arguing that Defendants Gloria and Flint violated the Court's September 15, 2020 Order (the "Order"). Following a hearing, the Court denied Plaintiffs' motion for contempt and sanctions. *See* Dkt. No. 96. On November 10, 2020, Plaintiffs filed an amended complaint which, among other things, added Shelly Kranz, a former Adecco employee, as a defendant to this action. *See* Dkt. No. 97. Plaintiffs then filed a motion for reconsideration of the Court's Order on its motion for a preliminary injunction. *See* Dkt. No. 76. The Court granted that motion in part and ordered that Defendant Walser must abide by the terms of her non-disclosure agreement during the pendency of this case. *See* Dkt. No. 105. Defendants then filed a motion for reconsideration of the Court's Order on Plaintiffs' motion for reconsideration. *See* Dkt. No. 108. The Court granted that motion to the extent that it clarified the obligations with which Defendant Walser must comply during the pendency of this litigation. *See* Dkt. No. 118.

Presently before the Court is Plaintiffs' motion to consolidate this action with *Staffworks, Inc. et al v. Adecco USA, Inc.*, No. 6:20-CV-747. *See* Dkt. No. 107. Defendants have opposed the motion and cross-moved to dismiss the complaint in its entirety. *See* Dkt. No. 115. For the following reasons, Plaintiffs' motion to consolidate is granted and Defendants' cross-motion to dismiss is denied.

## II. BACKGROUND[1]

### A.    Employment History and Post-Adecco Activities of the Former Employees

The Former Employees were hired by Plaintiffs at various times, beginning as early as 1996 and as recently 2019. *See* Dkt. No. 97 at ¶¶ 27-36. Prior to beginning their employment at Adecco, each of the Former Employees signed an employment agreement which contained non-compete, non-solicitation, non-disclosure, and return-of-property agreements, in addition to other post-employment obligations. *See id.* at ¶¶ 37-51. On May 12, 2020, Defendants Walser and Rodabaugh were informed that their positions at Adecco were being eliminated as the result of a corporate reorganization and that they were being terminated. *See id.* at ¶ 61. While Defendant Walser was cleaning out her office on May 13, 2020, she drilled a hole into two filing cabinets in her office. *See id.* at ¶ 65. Plaintiffs allege that Defendant Walser removed personnel files and other confidential information. *See id.*

Although informed of their termination in May, Defendants Walser's and Rodabaugh's last day was June 1, 2020. *See id.* at ¶ 62. After Defendant Walser was notified of her termination, but before her last day, she forwarded an email with multiple documents containing Adecco client and business information to herself and her husband. *See id.* at ¶¶ 70-71, 77. Prior to their last day at Adecco, Defendants Rodabaugh and Walser executed severance agreements with Adecco.

---

[1] The Court must accept these allegations as true at the motion to dismiss stage. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

*See id.* at ¶ 80. Shortly after Defendant Walser executed her severance agreement, she revoked the agreement. *See id.*

Although Defendant Walser was still employed by Adecco on June 1, 2020, she began working for Staffworks the same day. *See id.* at ¶¶ 73-74. Within a week of hiring Defendant Walser, Staffworks also hired Defendants Rodabaugh and Standford. *See id.* at ¶ 82. On June 9, 2020, Defendants Gloria and Flint resigned effective immediately and soon thereafter began working for Staffworks. *See id.* at ¶¶ 87-88. Defendant Rohde resigned effective immediately on June 12, 2020, and began working for Staffworks on June 15, 2020. *See id* at ¶ 99. Defendant Fravel was interviewed by Staffworks on June 17, 2020, and received an offer of employment on June 19, 2020. *See id.* at ¶ 122. However, Defendant Fravel did not resign from Adecco until June 24, 2020, when her maternity leave expired. *See id.* at ¶¶ 122-23. On August 5, 2020, Defendant Kranz resigned from her employment with Adecco and began working for Staffworks soon thereafter. *See id.* at ¶¶ 134, 137.

Plaintiffs allege that there were a variety of communications between the Former Employees and Adecco's clients and employees. These communications serve as the basis for a number of Plaintiffs' causes of action.

**B.    The Adecco Corning Facebook Page**

Plaintiffs assert that in January 2014, it created a Facebook page which they used to communicate with and solicit both existing and potential clients in interstate commerce, including clients in New York and Pennsylvania. *See* Dkt. No. 97 at ¶ 94. Plaintiffs' Facebook page displayed Adecco's trademark name in connection with the sale and advertising of goods and services. *See id.* On June 12, 2020, Plaintiffs discovered that Defendant Gloria "hijacked" the

Adecco Corning Facebook page by changing the administrator access rights and the name of the Facebook page to "Fingerlakes Staffing." *See id.* at ¶ 95.

Despite changing the cover photo and name, the "About" section continued to identify the page as belonging to a staffing agency located in "Corning, New York 14830." *See id.* at ¶ 96. Additionally, none of the previous content had been altered or removed. *See id.* Thus, the substantive text of posts still included Adecco's name. *See id.* Plaintiffs assert that the use of Adecco's name in the substantive post and "Fingerlakes Staffing" as the name of the page created confusion as to the source of the information. *See id.* at ¶ 97.

On June 12, 2020, Plaintiffs asked Facebook to shut down the Facebook page. *See id.* at ¶ 105. Facebook temporarily shut down the account one week later. *See id.* However, the account was reactivated on June 15, 2020 and still included old posts containing Plaintiffs' trademark. *See id.* During the period in which the page was active, Plaintiff claims that Adecco associates expressed confusion as to whether Plaintiff was affiliated with Defendant Staffworks. *See id.* at ¶ 106.

Plaintiffs informed Defendants Gloria and Flint during the week of June 19, 2020, that Plaintiffs considered this conduct to be trademark infringement. *See id.* at ¶ 107. On June 19, 2020, Defendants changed Plaintiffs' Facebook account to "Staffworks Upstate NY & Northern PA." *See id.* at ¶ 113. Defendants continued to operate the Facebook page until June 22, 2020, when Defendants shut down the site. *See id.*

### III. DISCUSSION

**A.     Motion to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc.*, 493 F.3d at 98 (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### 1. Breach of Contract

Here, Plaintiffs allege breach of numerous agreements by the Former Employees. *See* Dkt. No. 97. Specifically, Plaintiffs allege violations of the following provisions of the applicable Employment Agreements ("Agreements"): non-compete; non-solicitation; confidentiality/non-disclosure; return of property; duty of loyalty; and obligations regarding misuse of computers, email systems, and company property. *See id.* at ¶¶ 44-45, 47, 49, 51, 164.

Under New York law, a party asserting a breach of contract claim must allege the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff*, 171 F. Supp. 2d at 358 (citation omitted).

Initially, the Court notes that although Defendants seek dismissal of Plaintiffs' complaint in its entirety, Defendants provide no arguments as to why Plaintiffs' breach of contract claim as to every provision should be dismissed. Defendants advance three arguments with respect to the breach of contract claim. First, Defendants argue that the non-compete, non-solicitation, and non-disclosure provisions are unenforceable against Defendants Walser and Rodabaugh because their employment was terminated by Adecco. *See* Dkt. No. 115 at 13-15. Second, Defendants generally assert that the Agreements are overbroad, but only discuss the non-compete and non-solicitation provisions. *See id.* at 15-21. Third, Defendants argue that Plaintiffs' overreaching precludes partial enforcement of the restrictive covenants. *See id.* at 21.

Defendants fail to make any arguments regarding the following: the return of property and duty of loyalty provisions as to all Defendants; the non-disclosure agreements as applied to

Defendants Rohde, Gloria, Flint, Fravel, Standford, and Kranz; and the Handbook policies as applied to Defendants Walser, Standford, Rodabaugh, and Rohde. Accordingly, Plaintiffs' breach of contract claim will survive as to those provisions and Defendants.

### a. Restrictive Covenants

"As a general rule, 'New York courts adhere to a strict approach to enforcement of restrictive covenants because their enforcement conflicts with the general public policy favoring robust and uninhibited competition, and powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood.'" *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 214 (S.D.N.Y. 2013) (quoting *Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 371 (S.D.N.Y. 2009)). "Under New York law, 'negative covenants restricting competition are enforceable only to the extent that they satisfy the overriding requirement of reasonableness.'" *Freedom Mortg. Corp. v. Tschernia*, No. 20-CV-1206, 2021 WL 1163807, *3 (S.D.N.Y. Mar. 26, 2021) (quoting *Reed, Roberts Assocs., Inc. v. Strauman*, 353 N.Y.2d 303, 307 (1976)). "'A restraint is reasonable only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public.'" *Poller*, 974 F. Supp. 2d at 215 (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999)) (emphasis in original). "With respect to the first prong of this reasonableness analysis, an employer's 'legitimate' interests include: (1) the protection of trade secrets; (2) where the employer is exposed to 'special harm' due to the 'unique' nature of an employee's services; or (3) the goodwill of an employer's business." *Id.* (citation omitted).

Defendants argue that the restrictive covenants cannot be enforced against Defendants Walser and Rodabaugh because Plaintiffs cannot demonstrate a "continued willingness" to employ them. *See* Dkt. No. 115 at 13-15.

A non-compete agreement is unenforceable under New York law where the termination of employment is involuntary and without cause. *See Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84, 89 (1979); *see also Stanacard, LLC v. Rubard, LLC*, No. 12-cv-5176, 2016 WL 462508, *23 (S.D.N.Y. Feb. 3, 2016) (same). "Enforcing a non-competition provision when the employee has been discharged without cause 'would be "unconscionable" because it would destroy the mutuality of obligation on which a covenant not to compete is based.'" *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010) (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529-30 (2d Cir. 2006)). This rationale applies with equal force to covenants not to solicit a former employer's clients and employees; solicitation is simply a form of competition. *Id.* (citing *Nisselson v. DeWitt Stern Group, Inc. (In re UFG Int'l)*, 225 B.R. 51, 55-56 (S.D.N.Y. 1998)).

On May 12, 2020, Defendants Walser and Rodabaugh were notified that their positions were being eliminated. *See* Dkt. No. 97 at ¶ 61. However, Defendant Rodabaugh entered into a severance agreement with Adecco following her termination. *See id.* at ¶ 80. Therefore, while the non-compete and non-solicitation agreements cannot be enforced against Defendant Walser, the Court must determine whether they may be enforced against Defendant Rodabaugh. *See Arakelian*, 745 F. Supp. 2d at 41 (citing cases).

While the Court, citing *Arakelian*, previously found that restrictive covenants cannot be enforced against Defendant Rodabaugh, the Amended Complaint and additional briefing by the parties lead the Court in a different direction on the instant motion. Plaintiffs, citing *Experian Mark. Sol., Inc. v. Lehman*, No. 15-CV-476, 2015 WL 3796240, *8 (W.D. Mich. June 18, 2015), argue that Defendant Rodabaugh's restrictive covenants are enforceable regardless of her involuntary termination because she re-affirmed her commitment to those covenants in her

severance agreement after her termination. *See* Dkt. No. 122 at 13-14. The court in *Experian*, applying New York law, found that restrictive covenants may be enforced against a former employee where the employee re-affirms the restrictive covenants in a post-termination severance agreement in exchange for compensation. *See Experian*, 2015 WL 3796240, at *8. Plaintiffs correctly argue that *Experian* shares more facts with this case than *Arakelian*. Perhaps most importantly, in *Arakelian*, the restrictive covenants were found in the plaintiff's employment agreement and subsequent modifications to that agreement which were made *prior* to her termination. *See Arakelian*, 745 F. Supp. 2d at 28, 35. In *Experian*, the plaintiff re-affirmed the applicable restrictive covenants in a post-termination severance agreement. *See Experian*, 2015 WL 3796240, at *1-2. Similarly here, the severance agreement which Defendant Rodabaugh entered into affirmed her "'intent to abide by the terms' of the restrictive covenants and other obligations in her Employment Agreement." *See* Dkt. No. 97 at ¶ 80. Accordingly, at this stage, the Court finds that Rodabaugh's termination does not render the restrictive covenants unenforceable. The Court must determine whether the restrictive covenants, as applied to Defendants Rodabuagh, Rohde, Gloria, Flint, Fravel, Standford, and Kranz, are related to a legitimate business interest and are reasonable.

Defendants argue that the same rationale should apply to the non-disclosure provisions, thereby justifying dismissal of Plaintiffs' breach of contract action in that respect. *See* Dkt. No. 115 at 15. Defendants cite *Grassi & Co., CPAs, P.C. v. Janover Rubinroit, LLC*, 82 A.D.3d 700, 702 (2d Dep't 2011) for the proposition that non-disclosure agreements are unenforceable if the employee is terminated. *See id.* However, upon review of *Grassi*, the Court is not convinced that Defendants interpretation is correct. In *Grassi*, the court was faced with multiple provisions including "confidentiality provisions and ... restrictive covenants, including 'reimbursement

clauses.'" *Grassi*, 82 A.D.3d at 702. The court ultimately found that the "restrictive covenant and the reimbursement clauses were unenforceable" as to the terminated employee, but did not clarify whether the non-disclosure agreement was similarly unenforceable. The parties have not pointed to any other case law which extends the employee choice doctrine so far as to cover non-disclosure agreements. Absent such case law, the Court is not inclined to extend the doctrine any further. Accordingly, the Court finds that Defendant Walser's termination does not render her non-disclosure agreement unenforceable. Because Defendants make no other argument regarding the enforceability of the non-disclosure agreement, the Court denies Defendants' motion as to this portion of Plaintiffs' breach of contract claim.

### b. Covenant Protects a Legitimate Business Interest

"Only after determining that a restrictive covenant would serve to protect against such unfair and illegal conduct and not merely to insulate the employer from competition, does the reasonableness of the covenant in terms of its time, space or scope, or the oppressiveness of its operation become an issue." *Am. Inst. of Chem. Eng'rs v. Reber-Friel Co.*, 682 F.2d 382, 386-87 (2d Cir. 1982). Thus, the Court must assess whether Adecco has a legitimate business interest necessary to sustain each of the restrictive covenants. Here, Plaintiffs argue that the restrictive covenants are necessary to protect Adecco's goodwill with current customers and to safeguard confidential information. *See* Dkt. No. 122 at 14-19.

A business' desire to protect the "goodwill that it has fostered with customers constitutes a legitimate business interest." *Poller*, 974 F. Supp. 2d at 220 (quoting *Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 372 (S.D.N.Y. 2009)). "In many ways, 'the goodwill of a salesman's relationship with the customer is to a degree an assent of the employer.'" *Id.* (quoting *Ecolab, Inc. v. K. P. Laundry Mach. Inc.*, 656 F. Supp. 894, 899 (S.D.N.Y. 1987)). "For example, even where

the goodwill is developed by the salesperson, that development 'is done for the benefit of the employer under a duty of loyalty and in return for compensation paid to the salesman by the employer.'" *Id.* (quoting *Ecolab, Inc.*, 656 F. Supp. at 899). "Where ... the salesperson develops continuous relationships over the course of working for an organization, those longstanding relationships 'can be reasonably viewed as legitimate property interests of the employer which are entitled to contractual protection so long as the protective contracts are of reasonable scope.'" *Id.* (quoting *Ecolab, Inc.*, 656 F. Supp. at 899).

Here, Plaintiffs have a legitimate business interest in protecting the goodwill they have fostered with their customers through the Former Employees. Accordingly, the Court finds that the restrictive covenants as to Defendants Rodabaugh, Standford, Rohde, Gloria, Flint, Fravel, and Kranz protect legitimate business interests which are "entitled to contractual protection so long as the protective contracts are of reasonable scope."[2] *Poller*, 974 F. Supp. 2d at 220. Thus, the Court will turn to an examination of each agreement to determine reasonableness.

### c. Non-Compete Agreements

#### i. Defendants Rodabaugh, Standford, and Rohde

Defendant Standford's employment agreement provides the following:

> For a period of twelve months immediately following termination[] of my employment, I will not compete against Adecco or associate myself with any Adecco competitor as an employee, owner, partner, stockholder, investor, agent, or consultant. These restrictions apply to any market area in which I worked or had responsibility for during the last one and a half years of my employment with Adecco.

*See* Dkt. No. 1-2 at 1.

Defendants Rodabaugh and Rohde's employment agreement provides the following:

---

[2] The same legitimate business interests exist with respect to the restrictive covenants as to applied against Defendant Walser. However, as the Court previously discussed, because Defendant Walser was terminated, the non-compete and non-solicitation agreements may not be enforced against her.

> Except to the limited extent provided by an applicable state law, for a period of twelve months immediately following termination of my employment, I will not compete against Adecco or associate myself with any Adecco competitor as a colleague, owner, partner, stockholder, inventor, agent or consultant. These restrictions apply to any market in which I worked or had responsibility for during the last year of my employment with Adecco.

*See* Dkt. No. 1-9 at 1; Dkt. No. 1-10 at 1.

The non-compete agreements, which prohibit working for a competitor for the year immediately following termination of employment, are reasonable with respect to the time limitation. *See Poller*, 974 F. Supp. 2d at 220 (collecting cases). Additionally, because the restrictive covenant is limited in geographic scope to the area in which Defendants Rodabaugh, Standford, and Rohde performed work for Adecco, the restriction is reasonable. *See Konica Minolta Bus. Sol., U.S.A., Inc. v. Lowery Corp.*, No. 15-11254, 2020 WL 3791601, *6 (E.D. Mich. July 7, 2020) (citing *Poller*, 974 F. Supp. 2d at 220-21).

Having found that the restriction relates to a legitimate business interest – protecting goodwill – and finding the agreements reasonable in scope, the Court finds Plaintiffs have plausibly alleged that the non-compete agreements made between Plaintiffs and Defendants Rodabaugh, Standford and Rohde are enforceable.

### ii. Defendants Flint, Gloria, Fravel, and Kranz

Defendants Flint, Gloria, Fravel, and Kranz's employment agreements provide the following:

> As used herein, the term "Market Area" shall mean the 50 mile radius of Company office(s) to which Colleague is assigned, the territory to which Colleague is assigned to work, and/or in which Colleague will have responsibilities involving any business matter. During Colleague's employment with Company and for a period of twelve (12) months thereafter, whatever the reason for Colleague's termination of employment, unless Colleague receives Company's

advance written waiver as described herein, Colleague shall not, either directly or indirectly, either on Colleague's own behalf or on behalf of another person or entity, engage in or assist others in the following activities:

. . .

Within the Market Area, entering into, engaging in, being employed by, consulting or rendering services for, any business which competes with, or is similar to, Company's business at the time of Colleague's separation from employment with Company, in a capacity performing functions similar to those performed or managed by Colleague while employed by Company.

*See* Dkt. No. 1-11 at 2-3; Dkt. No. 1-12 at 2-3; Dkt. No. 1-13 at 2-3; Dkt. No. 97-1 at 2-3.

Similar to the previous non-compete agreements, the agreements of Defendants Flint, Gloria, Fravel, and Kranz are limited in time to a period of one year immediately following termination of their employment with Adecco. *See id.* Therefore, these agreements are reasonable in time. *See Poller*, 974 F. Supp. 2d at 220. However, the geographic limitations on these agreements are broader than the previous agreements. To the extent that the agreements bar Defendants Flint, Gloria, Fravel, and Kranz from working within the same geographic area in which they performed duties for Adecco, the agreements are reasonable. *See Konica Minolta Bus. Solutions*, 2020 WL 3791601, at *6. However, the geographical limitation preventing Defendants from doing business within a fifty-mile radius of the office to which they were assigned is greater than necessary to protect any legitimate business interest that Adecco might have. This limitation is overbroad because it could prevent Defendants from doing business with clients they did not encounter during their time at Adecco. *See Solomon Agency Corp. v. Choi*, No. 16-CV-0353, 2016 WL 32557006, *6 (E.D.N.Y. May 16, 2016) (collecting cases).

While the agreements are overbroad with respect to the fifty-mile radius limitation, the Court finds that the remainder of the non-compete agreements are reasonable and will disregard

the overbroad portion. *See Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 277 (E.D.N.Y. 2002) ("If a court finds a limitation to be unreasonable, it can 'blue pencil' the covenant to restrict the term to a reasonable geographic limitation, and grant partial enforcement for the overly broad restrictive covenant") (citing *BDO Seidman*, 93 N.Y.2d at 394).

"Under New York law, a restrictive covenant may be partially enforced if the employer can demonstrate 'an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing.'" *Marsh USA Inc.*, 2008 WL 4778239, at *21 (quoting *BDO Seidman*, 712 N.Y.2d at 394; *see also Karpinski v. Ingrasci*, 268 N.E.2d 751 (1971)). "'Factors weighing against partial enforcement are the imposition of the covenant in connection with hiring or continued employment—as opposed to, for example, imposition in connection with a promotion to a position of responsibility and trust—the existence of coercion or a general plan of the employer to forestall competition, and the employer's knowledge that the covenant was overly broad.'" *Brown & Brown*, 980 N.Y.S.2d at 640 (quoting *Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*, 9 A.D.3d 805, 807, 780 N.Y.S.2d 675 (3d Dep't 2004)). "Whether to partially enforce an overly broad non-compete agreement is left to the discretion of the court based upon a case specific analysis." *Veramark Techs. Inc.*, 10 F. Supp. 3d at 407 (citing *Brown & Brown*, 980 N.Y.S.2d at 640 (quoting *BDO Seidman*, 93 N.Y.2d at 394)).

As the Court described above, these agreements are consistent with reasonable standards of fair dealing and are intended to protect a legitimate business interest. Further, despite Defendants' argument to the contrary, there is no evidence of overreaching or coercive use of dominant bargaining power. Although the covenants were entered into in connection with hiring, Plaintiffs allege that the Former Employees were permitted to ask questions, consult an attorney,

and negotiate the terms of the agreement. *See* Dkt. No. 97 at ¶ 39. Defendants decision not to

take advantage of that opportunity does not mean that Adecco overreached or coerced Defendants

into signing the agreement. Accordingly, the Court finds that partial enforcement of the

agreement is appropriate.

Having found that the restriction is related to a legitimate business interest – protecting

goodwill – and finding the agreements reasonable, in part, [3] the Court finds that Plaintiffs have

plausibly alleged that the non-compete agreements made between Plaintiffs and Defendants Flint,

Gloria, Fravel, and Kranz are enforceable in part.[4]

### d. Non-Solicitation Agreements[5]

In evaluating whether a non-solicitation agreement is enforceable, a court must apply the

same test used to evaluate non-compete agreements. *See Mercer Health & Benefits LLC v.

DiGregorio*, 307 F. Supp. 3d 326, 348-49 (S.D.N.Y. 2018); *MasterCard Int'l Inc. v. Nike, Inc.*,

164 F. Supp. 3d 592, 600 (S.D.N.Y. 2016). "'[W]here an employer's business is conducted

worldwide to a global customer base, "the lack of a geographic restriction is necessary."'" *Id.* at

---

[3] Plaintiffs have plausibly alleged that the agreements are enforceable except for the restriction which prohibits Defendants Flint, Gloria, Fravel, and Kranz from working within fifty miles of the Adecco office(s) to which they were assigned.

[4] Alternatively, the Court would be well within its rights to deny Defendants' motion to dismiss this claim due to the intensely fact-based inquiry that is required determine the enforceability of a non-compete agreement. *See Liberty Mut. Ins. Co. v. Guereschi*, No. 17-CV-1152, 2020 WL 1307315, *4 (W.D.N.Y. Mar. 19, 2020) (noting that the enforceability of a non-compete agreement under New York law "not properly considered" on a motion to dismiss) (collecting cases); *Advance 2000, Inc. v. Harwick*, No. 16-CV-1037S, 2019 WL 6725977, *5-6 (W.D.N.Y. Dec. 11, 2019) ("The reasonableness, and therefore the enforceability, of Defendants' noncompete provisions must be decided after an 'intensely fact-based' inquiry"); *Installed Bldg. Prod., LLC, v. Cottrell*, No. 13-CV-1112, 2014 WL 3729369, *7-8 (W.D.N.Y. July 25, 2014) ("the Court cannot hold at [motion to dismiss stage] that the non-compete at issue is unenforceable"); *Nostrum Pharm., LLC v. Dixit*, No. 13 Civ. 8718, 2014 WL 4370695, *6-7 (S.D.N.Y. Sept. 2, 2014) (noting that resolution of enforceability of a non-compete agreement was "intensely fact-based" and "not one that lends itself to resolution on a motion to dismiss"); *SD Prot., Inc.*, 498 F. Supp. 2d at 585-86 (denying motion to dismiss and noting that without discovery, it would be "premature" to determine whether a restrictive covenant was reasonable).

[5] In this matter, there are two separate non-solicitation clauses at issue: non-solicitation of Adecco clients and non-solicitation of Adecco employees.

16

601 (quoting *Reed Elsevier Inc. v. TransUnion Holding Co.*, No. 13-cv-8739, 2014 WL 97317, *7 (S.D.N.Y. Jan. 8, 2014) (other quotation omitted)). Additionally, "New York courts have upheld as reasonable one year and two year non-solicitation provisions." *Id.* (collecting cases).

Here, Plaintiffs argue that the non-solicitation of clients agreement protects Adecco's legitimate business interest to preserve goodwill with customers and prevent unfair conduct. *See* Dkt. No. 122 at 16. Certainly, a restriction on soliciting Adecco clients serves to protect Adecco's goodwill with customers and to prevent unfair competition. With respect to the non-solicitation of Adecco employees, Plaintiffs argue that these clauses are necessary to protect the confidential information entrusted to Adecco employees. *See id.* The Court finds that the agreement as to non-solicitation of Adecco employees, or the "non-recruitment provision", serves Adecco's legitimate business interest in protecting confidential information.

### *i. Defendant Standford*

With respect to the non-solicitation agreement, Defendant Standford's employment agreement provides that "[w]hile working for Adecco and during the twelve months immediately following my termination of employment, I will not directly or indirectly solicit any of Adecco's customers or employees for a competing business." *See* Dkt. No. 1-2 at 1.

The restriction is reasonable with respect to the time limit as it applies for only one year following the termination of her employment. *See DiGregorio*, 307 F. Supp. 3d at 349 (noting that limitations of one year and longer are routinely found to be reasonable). However, the restriction does not include a specific limitation with respect to whom Defendant Standford may contact, but rather includes a blanket prohibition against soliciting any Adecco customer. This portion of the provision is overbroad. The provision is reasonable to the extent that it applies to Defendant Standford's solicitation of Adecco customers with whom Defendant Standford may

have had contact or obtained confidential information about. *See id.* For the same reasons described above, partial enforcement of the non-solicitation clause is appropriate in this case.

The clause barring solicitation of Adecco employees is similarly limited to the twelve months immediately following termination of employment with Adecco and, therefore, is reasonable in duration. Additionally, the Court finds that the scope of the agreement is narrowly defined to protect Adecco's legitimate business interest. *See MasterCard Int'l*, 164 F. Supp. at 599-602 (finding enforceable a clause which prohibits "'directly or indirectly, solicit[ing], induc[ing], recruit[ing], or encourag[ing] any other employee, agent, consultant or representative to leave the service of [MasterCard] for any reason ... ' for a period of 24 months (Dennings) or 12 months (Fusselman) following termination of their employment").

### ii. Defendants Rohde and Rodabaugh

With respect to the non-solicitation agreement, Defendants Rodabaugh and Rohde's employment agreement provides as follows:

> While working for Adecco and during the twelve months immediately following my termination of employment, I will not directly or indirectly solicit any of Adecco's customers or Associates (provided I have reason to know they are Adecco employees) for a competing business.
>
> I acknowledge that each and every Adecco colleague provides a competitive value and advantage to Adecco based upon many factors, including but not limited to knowledge of Adecco's business strategy, procedures, relationships and plans. While working for Adecco and during the seven months immediately following my termination of employment, I will not directly or indirectly solicit any of Adecco's colleagues.

*See* Dkt. No. 1-9 at 1; Dkt. No. 1-10 at 1.

This agreement is also reasonable in duration as it only applies, at most, to the twelve-month period immediately following the termination of Defendants Rodabaugh and Rohde's

employment with Adecco. However, similar to Defendants Standford's agreement, this non-solicitation agreement is a blanket prohibition on contacting all Adecco customers, regardless of whether Defendants Rodabaugh and Rohde actually had contact with or had access to confidential information about the customer. This portion of the agreement is overbroad. *See DiGregorio*, 307 F. Supp. 3d at 349. However, for the reasons discussed above, the agreement may be enforced to the extent that it prohibits solicitation of customers and associates with whom Defendants Rodabaugh and Rohde had contact or obtained confidential information about. With respect to the non-solicitation of Adecco employees provision, for the reasons described above, the Court finds that Plaintiffs have plausibly alleged that the clause is enforceable against Defendants Rodabaugh and Rohde.

### iii. Defendants Flint, Gloria, Fravel, and Kranz

With respect to the non-solicitation agreements, Defendants Flint, Gloria, Fravel, and Kranz's employment agreements provide the following:

> As used herein, the term "Market Area" shall mean the 50 mile radius of Company office(s) to which Colleague is assigned, the territory to which Colleague is assigned to work, and/or in which Colleague will have responsibilities involving any business matter. During Colleague's employment with Company and for a period of twelve (12) months thereafter, whatever the reason for Colleague's termination of employment, unless Colleague receives Company's advance written waiver as described herein, Colleague shall not, either directly or indirectly, either on Colleague's own behalf or on behalf of another person or entity, engage in or assist others in the following activities:
>
> . . .
>
> Soliciting, hiring, recruiting, or attempting to recruit any person employed by or contracted with Company of whom Colleague became aware through Colleague's employment with Company, at any time during the lesser of the twelve (12) months immediately prior to Colleague's termination of employment with Company or the term of Colleague's employment;

Soliciting, contacting, calling upon, or attempting to call upon, for or on behalf of any business which competes with Company, any established or prospective Company's client(s) (s)he served or solicited while employed by Company, or any Company's client(s) which were served by Company in the Market Area of which Colleague had access to Confidential Information, at any time during the lesser of the twelve (12) months immediately prior to Colleague's termination of employment with Company or the term of Colleague's employment.

For purposes of this Section, "Soliciting" shall include, but is not limited to, direct and indirect solicitations made through social-networking platforms.

*See* Dkt. No. 1-11 at 2-3; Dkt. No. 1-12 at 2-3; Dkt. No. 1-13 at 2-3; Dkt. No. 97-1 at 2-3.

This agreement is reasonable in time and scope. The limitation is for a period of only twelve months immediately following termination. Additionally, the restriction limits the solicitation of customers or prospective customers that Defendants either directly served or any Adecco clients within the area where the employee had access to confidential information for clients. Put more simply, the Former Employees are not permitted to solicit clients with whom they worked or any client who contracted with the employee's assigned Adecco office. While the first part of this agreement is reasonable, the latter portion is not. As Defendants correctly assert, the latter portion of this agreement is exactly the sort of agreement that is frequently invalidated in New York because it prohibits a former employee from soliciting a client "without regard to whether the employee served the client during the course of employment." *BDO Seidman*, 93 N.Y.2d at 392 (collecting cases). However, for the reasons discussed above, the agreement may be enforced to the extent that it prohibits solicitation of customers and associates with whom Defendants Flint, Gloria, Fravel, and Kranz had contact or obtained confidential information about.

Accordingly, the Court finds that Plaintiffs have plausibly alleged that the non-solicitation of customers agreements of Defendants Flint, Gloria, Fravel, and Kranz are enforceable, at least in part, at this stage. *See DiGregorio*, 307 F. Supp. 3d at 349. With respect to the non-solicitation of Adecco employees provision, for the reasons described above, the Court finds that Plaintiffs have plausibly alleged that the clause is enforceable. Although the Court has found that portions of the agreements may be overbroad, the Court has found that partial enforcement of the agreements, absent the overbroad provisions as described above, is appropriate. *Veramark Techs. Inc.*, 10 F. Supp. 3d at 407. Thus, the allegations are sufficient at this stage.

### e. Undue Hardship

"Even where a company's interests are legitimate and reasonably protected by a restrictive covenant, courts will decline to enforce restrictive covenants where they impose an undue hardship or are deleterious to public policy[.]" *Poller*, 974 F. Supp. 2d at 222. "New York courts have routinely found that an individual does not suffer undue hardship where a restrictive covenant merely prohibits him from soliciting his former employer's clients for a reasonably defined period of time." *DiGregorio*, 307 F. Supp. 3d at 351 (collecting cases).

Defendants do not argue that the restrictive covenants are unduly burdensome or otherwise impose undue hardship. *See* Dkt. Nos. 115, 122. Regardless, the Court finds, at this stage, that the non-solicitation and non-compete agreements do not impose an undue hardship on the Former Employees. All of the agreements apply only for the year immediately following termination of employment with Adecco. Further, with respect to the non-compete agreements, the Court found that they are enforceable to the extent that they bar working for a competitor within the geographic area in which Defendant performed work or had responsibility during their employment with Adecco. These agreements do not prevent Defendants from working in the

staffing industry in neighboring regions or working outside the staffing industry for the term of the agreement.

With respect to the non-solicitation agreements, the Court found that those agreements apply only to Adecco clients or prospective clients with whom Defendants worked or had access to confidential information about. These clauses do not prevent Defendants from soliciting organizations that were never Adecco clients, or even Adecco clients so long as the Defendant never worked with that client or had access to confidential information about that client during their employment with Adecco. Thus, given the reasonable temporal limitations, Defendants' ability to work in the staffing industry in neighboring regions, and the Court's reading of the non-solicitation clause as limited to those clients with whom Defendants worked with or had access to confidential information about while employed by Adecco, the restrictive covenants do not impose an undue hardship on Defendants Rodabaugh, Standford, Rohde, Flint, Gloria, Fravel, and Kranz. *See Poller*, 974 F. Supp. 2d at 222 ("Thus, given its reasonable temporal limitations, Poller's ability to sell IVIG in neighboring geographic areas, and the Court's reading of the non-solicitation clause as limited to those clients with which Poller developed a relationship exclusively during her time at BioScrip, the RCA does not impose an undue hardship on Poller"). Further, the agreements regarding non-solicitation of Adecco employees is so limited in duration that the Court finds it does not impose an undue hardship. *See Mastercard Int'l*, 164 F. Supp. 3d at 602.

### f. Injury to the Public

Plaintiffs allege that the covenants do not injure the public and Defendants' motion does not appear to dispute this. *See* Dkt. No. 97 at ¶ 161; Dkt. No. 115. Thus, Plaintiffs have plausibly

alleged this element.  Accordingly, Defendants' motion to dismiss Plaintiffs' breach of contract claim is denied.

### 2. Tortious Interference with Contract

"[U]nder New York law, '[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. Appx. 102, 104 (2d Cir. 2012) (quoting *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996)).

Plaintiffs bring this claim against Defendants Staffworks, Vitullo, Walser, and Rodabaugh.  *See* Dkt. No. 97 at ¶ 168.  Specifically, Plaintiffs allege that Defendants Staffworks, Vitullo, Walser, and Rodabaugh intentionally interfered with contracts between Adecco and the Former Employees and other customers.  *See id.* at ¶¶ 169-72.  In their cross-motion to dismiss, Defendants, reiterating their arguments discussed above, argue that this claim must fail because the Agreements are unenforceable.  *See* Dkt. No. 115 at 23.

### a. Employment Agreements of the Former Employees

Defendants' only argument in support of their motion to dismiss is that there can be no tortious interference with contract claim because the Employment Agreements which the Former Employees entered into are unenforceable.  *See* Dkt. No. 115 at 23-24.  However, as the Court explained in detail above, the allegations are sufficient at this stage for the Employment Agreements to be deemed enforceable.  Therefore, Defendants' argument fails as to this portion of

Plaintiffs' tortious interference with contract claim. Absent any other arguments, the Court denies this portion of Defendants' motion.[6]

### b. Contracts with Adecco Clients

Plaintiffs correctly point out that Defendants do not specifically address the portion of this claim that alleges that Defendants interfered with contracts with Adecco clients. To the extent that Defendants argue that Adecco's clients left Adecco because of dissatisfaction with its performance, not because of wrongdoing by Defendants, this factual argument is one which the Court will not entertain at this early stage. Defendants only other mention of this portion of the claim is when they correctly note that Plaintiffs cannot maintain a tortious interference with contract claim where the contract may be terminated at will. *See* Dkt. No. 115 at 24. However, this argument fails at this point because it is unclear whether Adecco's contracts with its clients were at-will in nature. Defendants make no other arguments as to this portion of Plaintiffs' claim, leaving the Court to examine only whether Plaintiffs have satisfied the minimal pleading requirements.

The Amended Complaint alleges that Adecco entered into valid contracts with clients, including Felix Schoeller and Tessy Plastics, that Defendants knew about those contracts, that Defendants intentionally and maliciously interfered with those contracts causing breaches, and

---

[6] The Court finds that Plaintiffs have plausibly alleged the remaining elements of a tortious interference with contract claim based on the Employment Agreements. Plaintiffs allege that Adecco entered into valid contracts with the Former Employees, that Defendants knew about these contracts and intentionally interfered with the contracts causing breaches, and that Plaintiffs sustained damages as a result of the breach. *See* Dkt. No. 97 at ¶¶ 169-73. For example, Plaintiffs specifically allege that Defendants Vitullo and Staffworks often obtain copies of employment agreements that prospective employees have with other companies and advise the employees to disregard any restrictive covenants within the agreements. *See id.* at ¶¶ 53-59. Plaintiffs further note that some of the Agreements are countersigned by Walser and Rodabaugh, further supporting allegations that they were aware of the Former Employees' restrictive covenants with Adecco. *See id.* at ¶ 39.

that Plaintiffs sustained damages as a result of the breaches. *See* Dkt. No. 97 at ¶¶ 170-73. Thus, the portion of Plaintiffs' tortious interference with contract claim which deals with contracts with Adecco clients must survive. Accordingly, Defendants' motion to dismiss Plaintiffs' tortious interference with contract claim is denied.

### 3. Tortious Interference with Business Relationships/Prospective Advantage

Plaintiffs allege a claim for tortious interference with business relationships/prospective economic advantages against all Defendants. *See* Dkt. No. 97 at ¶¶ 175-79. Specifically, Plaintiffs allege that Adecco had existing and/or prospective economic relationships and opportunities with clients, that Defendants were aware of those relationships, that Defendants wrongfully interfered with those relationships thereby creating a disruption or termination of those opportunities and obligations with Adecco, and that Adecco was damaged as a result of Defendants' conduct. *See id.*

Defendants argue that this claim must be dismissed because Plaintiffs have failed to identify any relationship that it would have entered into or continued but for Defendants' wrongful conduct. *See* Dkt. No. 115 at 24. More specifically, Defendants argue that Plaintiffs have failed to allege that a specific contract would have been entered into but for Defendants' conduct, as is required. *See id.* at 25-26. Additionally, Defendants argue that because they were motivated, at least in part, by economic self interest, Plaintiffs cannot establish that Defendants actions were wrongful. *See id.* at 24-25.

"In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Purgess v.*

*Sharrock*, 33 F.3d 134, 141 (2d Cir. 1994) (citing *Burba v. Rochester Gas & Elec. Corp.*, 528 N.Y.S.2d 241 (4th Dept. 1988); *see also PPX Enter., Inc. v. Audio Fidelity Enter., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)). This claim may be pled as an alterative to a tortious interference with contract claim, in the event that a court finds that the contract at issue is unenforceable. *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02-CV-1363, 2003 WL 21203503, *7 (S.D.N.Y. May 22, 2003).

"To establish tortious interference with business relations under New York law, 'the plaintiff must show that defendant's conduct was not "lawful" but "more culpable."'" *Unicorn Crowdfunding, Inc. v. New Street Enter., Inc.*, — F. Supp. 3d —, 2020 WL 7401735, *13 (S.D.N.Y. Dec. 17, 2020) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)). "Although 'as a general rule,' a defendant's conduct must amount to a 'crime or independent tort' to support liability for tortious interference with business relations, an exception to this rule 'has been recognized where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs' or employs 'wrongful means.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 190, 192; *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013); *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011)). "Even when a defendant's sole purpose was not to injure the plaintiff, New York courts have held that the use of 'wrongful means' can support a claim for tortious interference." *Id.* (citing *Carvel Corp.*, 3 N.Y.3d at 192; *Catskill Dev., LLC v. Park Place Ent. Corp.*, 547 F.3d at 132). "Wrongful means 'include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure.'" *Id.* (quoting *Carvel Corp.*, 3 N.Y.3d at 191).

Plaintiffs do not appear to argue that Defendants' sole purpose was to injure Plaintiffs. *See* Dkt. No. 122 at 26-27. Rather, Plaintiffs argue that Defendants used wrongful means in inducing

breach of the contracts. *See id.* The Amended Complaint includes allegations that Defendants misled clients with whom Adecco had longstanding relationships, causing the clients to solicit bids for projects from other companies, which resulted in loss of business for Adecco. *See* Dkt. No. 97 at ¶¶ 84-85, 102-03, 112. At this early stage, the Court finds that Plaintiffs plausibly allege that Defendants used wrongful means to tortiously interfere with Plaintiffs' business relationships.

Defendants' second argument in support of dismissal is that Plaintiffs failed to allege that Adecco would have entered into a specific contract but for Defendants' conduct. This argument also fails. *See Hannex Corp. v. GM, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998) (quoting Restatement (Second) of Torts § 766B cmt. c (1979) (other citation omitted) ("[I]t is well-settled that a plaintiff can recover if that plaintiff can prove that the defendant tortiously interfered with 'a continuing business or other customary relationship not amounting to a formal contract'"). Plaintiffs have alleged that Defendants willfully interfered with "existing and potential clients" with whom they had longstanding relationships. *See* Dkt. No. 97 at ¶¶ 176-77. Accordingly, Defendants' cross-motion to dismiss is denied as to this claim.

### 4. *Actual and Threatened Trade Secret Misappropriation Under Federal and State Law*

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999) (citations omitted). "[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" *Id.* at 44 (quotation and other citation

27

omitted). In determining whether information constitutes a trade secret, New York courts have considered the following factors:

> "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

*Id.* (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993)).

Defendants argue that Plaintiffs' misappropriation of trade secrets claim must fail because Plaintiffs do not have trade secrets. *See* Dkt. No. 115 at 26. In opposition, Plaintiffs allege that their Microstrategy, Salesforce, Bullhorn, and Custom Match databases and compilations drawn from them constitute trade secrets. *See* Dkt. No. 97 at ¶¶ 183-84; Dkt. No. 122 at 21.

Generally, the "'existence of a trade secret is a question of fact.'" *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 267 (S.D.N.Y. 2014) (quoting *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (other citation omitted); *see also Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 607 (S.D.N.Y. 2004). In some situations, however, whether information constitutes a trade secret "'may be evident from the pleadings or the facts.'" *Big Vision Private*, 1 F. Supp. 3d at 267 (quoting *Medinol*, 346 F. Supp. 2d at 607).

Generally, courts may be able to determine the existence of trade secrets on a motion for summary judgment following discovery. *See Big Vision Private*, 1 F. Supp. 3d at 267-68; *Medinol*, 346 F. Supp. 2d at 607. Only in cases where is it obvious from the pleadings that the information is not a trade secret are such issues decided on motions to dismiss. *See Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 305 (S.D.N.Y. 2005)

(finding that the alleged trade secrets were made up of information that was disclosed by the company as part of the securitization of loans and relates only to non-occurring parts of the plaintiff's business).

Here, it is not evident from the pleadings or facts whether the information at issue constitutes trade secrets. Plaintiffs provide definitions for most of the alleged trade secret databases. Microstrategy is "an overarching database aggregating financial, sales, and other data from across the company and various systems." *See* Dkt. No. 97 at ¶ 23. Salesforce "tracks and aggregates all sales activity." *Id.* Bullhorn is used for "recruitment activity and includes a whole host of valuable, non-public data on millions of candidates." *Id.* Plaintiffs do not describe the function of Custom Match. *See id.* The examples provided by Plaintiffs also mention information about pricing models, revenue, profit, markup, client lists for various offices, and other public and non-public information. *See id.* at ¶ 184. Importantly, it is Plaintiffs' position that the information contained in these databases may not constitute trade secrets when examined individually but that the compilation and integration of this data make the databases trade secrets. *See* Dkt. No. 122 at 21. While Plaintiffs allegations are sufficiently specific to survive a motion to dismiss, discovery is necessary in order to determine whether each of the databases contains the kinds of information that have been found to constitute trade secrets. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for actual and threatened misappropriation of trade secrets is denied.

### 5. Conversion

Plaintiffs have also alleged conversion against Defendants Staffworks, Vitullo, Walser, Rodabaugh, Rohde, Gloria, Flint, Fravel, and Standford. *See* Dkt. No. 97 at ¶¶ 194-202. Specifically, Plaintiffs allege that Defendants Staffworks, Vitullo, Walser, Rohde, Gloria, Flint,

Fravel, and Standford converted Adecco's Corning Facebook Page, company information and documents, and other company property. *See id.* at ¶ 195. Based on the Court's reading of Defendants' cross-motion, it seems that their motion to dismiss relates only to conversion of trade secrets. *See* Dkt. No. 115 at 10-13, 26, 29, 32; Dkt. No. 123 at 7-8. Defendants' motion may be construed to seek dismissal of the conversion claim to the extent that Plaintiffs allege Defendants converted the Adecco Facebook page. *See* Dkt. No. 115 at 10, 32. However, references to the conversion claim unrelated to any trade secrets are sparse and vague.

"'[I]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" *Borowski v. Mordino*, No. 16-CV-999, 2020 WL 6083425, *1 (W.D.N.Y. Oct. 15, 2020) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Therefore, Defendants' motion to dismiss Plaintiffs' conversion claim is denied. Alternatively, Defendants' motion is denied on the merits.

"To establish a cause of action to recover damages for conversion, 'the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question—to the exclusion of the plaintiff's right.'" *Lapp Insulators LLC v. Gemignani*, No. 09-cv-0694, 2011 WL 1198648, *12 (W.D.N.Y. Mar. 9, 2011) (quotation omitted). New York courts have held that the unauthorized dominion over "[e]lectronic information suffices" to state a claim for conversion. *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010); *see also Lapp Insulators*, 2011 WL 1198648, at *13.

Plaintiffs allege that Defendants converted Adecco property including the Elmira-Corning Facebook page, documents stored in Adecco offices, Adecco-issued devices, and Adecco

merchandise.  *See* Dkt. No. 97 at ¶¶ 65, 67, 73, 102, 129, 149, 194-201.  Among the many allegations are that Defendants Gloria, Flint, Rohde, Rodabaugh, and Staffworks allegedly exercised unlawful dominion of the Adecco Corning Facebook page to the exclusion of Adecco. *See id.* at ¶ 199.  The complaint also alleges that Defendants Walser, Rodabaugh, Rohde, Gloria, Flint, and Standford have failed to return Adecco-issued electronic devices.  *See id.* at ¶ 149. Although Defendants deny these allegations, the Court must accept these allegations as true at this early stage.  *See ATSI Commc'ns, Inc.*, 493 F.3d at 98.  Thus, Plaintiffs have plausibly alleged conversion against Defendants Staffworks, Vitullo, Walser, Rodabaugh, Rohde, Gloria, Flint, Fravel, and Standford.  Accordingly, Defendants' cross-motion to dismiss is denied as to this claim.

### *6. Trademark Infringement and Unfair Competition under the Lanham Act*

Plaintiffs bring their trademark infringement and unfair competition claims pursuant to Title 15, United States Code, Sections 1114 and 1125.  *See* Dkt. No. 97 at ¶¶ 203-08.  To prevail on a trademark infringement claim pursuant to Sections 1114 and 1125, "a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale ... or advertising of goods or services,' ... (5), without the plaintiff's consent."  *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (citations omitted).  "In addition, the plaintiff must show that defendant's use of that mark 'is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'"  *Id.* (quoting 15 U.S.C. § 1125(a)(1)(A)) (alterations in original).

### *a. "Use in Commerce"*

Before the Court dives into an analysis of the parties' arguments, it is important to distinguish between two distinct concepts in trademark law: use *of* a trademark and use *as* a mark. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013). However, the Second Circuit has held that the definition of "use of commerce" applies to all claims under the Lanham Act.[7] *See id.* (quoting 18 U.S.C. §§ 1114(1)(a), 1125(a)(1)); *see also Can't Live Without It, LLC v. ETS Express, Inc.* 287 F. Supp. 3d 400, 414 (S.D.N.Y. 2018) (citing *1-800 Contacts*, 414 F.3d at 407). "'[U]se' [in commerce] must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' *of* a trademark." *Kelly-Brown*, 717 F.3d at 306 (quoting *1-800 Contacts*, 414 F.3d at 412).

The Lanham Act provides the following:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce –
>
> ...
>
>> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

---

[7] Plaintiffs argue that the appendix to the Second Circuit's decision in *Rescuecom Corp. v. Google Inc.*, 526 F.3d 123 (2d Cir. 2009) eliminated the requirement that Plaintiff show use of its mark in commerce by Defendants. *See* Dkt. No. 122 at 30. However, the Second Circuit in *Rescuecom* included a very clear disclaimer which Plaintiffs seem to ignore: "[t]he discussion in this Appendix is ... dictum and not a binding opinion of the court." *Rescuecom*, 562 F.3d at 140. Thus, the "use in commerce" requirement, as outlined in *1-800 Contacts*, remains binding precedent. *See Can't Live Without It*, 287 F. Supp. 3d at 415 ("Nevertheless, despite the

One of the primary arguments in Defendants' motion to dismiss is that Plaintiffs have not plausibly alleged "use in commerce." *See* Dkt. No. 115 at 29-31. However, the parties' views of what it means for a trademark to be "used in commerce" are incongruous. Defendants seem to argue that Plaintiffs' claim must fail because Plaintiffs have not alleged that Defendants "'proactively affix[ed], reproduce[d], or displace[d] the trademark at issue.'" *See* Dkt. No. 115 at 31 (quoting *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 10 Civ. 3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018)). However, the Court disagrees with the interpretation of the court in *Alzheimer's Foundation of America*. The quote upon which Defendants rely comes from *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp 2d 545, 550 (E.D.N.Y. 2007). The determinative factor in *FragranceNet*, was that the trademark was used only in internal data and metatags[8] which were never displayed to consumers. *See id.* The court found that because the use was "not communicated to the public, the use does not indicate source or origin of the mark" and, therefore, does not constitute "use." *See id.* That is not the case here. Here, Plaintiffs allege that Defendants displayed Adecco's trademarks via a Facebook page. *See* Dkt. No. 97 at ¶ 205. Therefore, the Court disagrees with the application of the *FragranceNet* logic to this case. To the extent that Defendants argue that Plaintiff must show that Defendants took action to re-affix or reproduce Adecco's trademark in order to establish "use in commerce," the Court disagrees.[9]

---

confusion (in every sense) generated by the competing discussion in *1–800 Contacts* and *Rescuecom Corp.*, the Circuit has not overruled *1–800 Contacts*").
[8] "Metatags" refer to "invisible text within websites that search engines use for ranking results." *1-800 Contacts*, 414 F. 3d at 411.
[9] Even if Plaintiffs were required to allege that Defendants took affirmative action to re-affix Plaintiffs' mark, the Court finds that Plaintiffs have plausibly alleged that such action occurred here. *See* Dkt. No. 97 at ¶¶ 93, 95-98; *Thousand Island Park Corp. v. Welser*, 314 F. Supp. 3d 391, 398 (N.D.N.Y. 2018) (citing *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 303 (E.D.N.Y.

On the opposite end of the spectrum, Plaintiffs cite *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305-06 (2d Cir. 2013), for the proposition that they are not required to show that Defendants used the mark in any particular way. *See* Dkt. No. 122 at 30. However, *Kelly-Brown*, primarily dealt with the use of a trademark on a good – not in association with services, as is the issue here. *See Kelly-Brown*, 717 F.3d at 305-06. Indeed, the Second Circuit noted that, in addressing the "use in commerce" element, Section 1127 specifically provides that a mark is used "on goods when … it is placed *in any manner* on the goods." *See id.* at 305 (emphasis in original). With respect to services, Section 1127 provides no such caveat. This distinction leads the Court to believe that Plaintiffs must show that "'a mark shall be deemed to be in use in commerce ... on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce.'" *Rescuecom*, 562 F.3d at 128 (quoting 15 U.S.C. § 1127). The court in *Kelly-Brown* does, however, specifically state that "in determining whether the plaintiffs have satisfied the 'use in commerce' requirement, we ask whether the trademark has been displayed to consumers in connection with a commercial transaction." *Kelly-Brown*, 717 F.3d at 306. Thus, the Court will examine whether Defendants used Plaintiffs' mark in connection with a commercial transaction.

Defendants argue that Plaintiffs' trademark claim must be dismissed because the mark at issue was never displayed in connection with a commercial transaction. *See* Dkt. No. 115 at 31. Plaintiffs argue otherwise. *See* Dkt. No. 122 at 31-32. In the amended complaint, Plaintiffs allege that "Defendants' use of Adecco's registered trademark in content that appeared under the 'Fingerlakes Staffing' and 'Staffworks Upstate NY & Northern PA' names – and *in conjunction with staffing services provided in interstate commerce identical or closely related to those provided by Adecco* – created a likelihood of confusion." *See* Dkt. No. 97 at ¶ 114 (emphasis

2014)) ("[T]he improper use of another's mark in connection with marketing or sales on a social

added).  The Court finds that these allegations are sufficient at this early stage.  The extent to which Defendants used Adecco's marks is a factual issue that is better examined after the completion of discovery.

Alternatively, the Court finds that Defendants' conduct constitutes "use in commerce" because it interfered with Adecco's ability to offer its own services.  *See Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 629, 1997 WL 13313 (finding that the "defendant's use is commercial because of its effect on plaintiff's activities" and finding that "defendant's appropriation ... prevents those users from reaching plaintiff and its services and message"); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001) ("To use [plaintiff's] Mark 'in connection with' goods or services, [defendant] need not have actually sold or advertised goods or services on the [the allegedly trademark infringing] website.  Rather, [defendant] need only have prevented users from obtaining or using [plaintiff]'s goods or services, or need only have connected the website to other's goods or services").

### b. Confusion

Defendants also argue that Plaintiffs do not plausibly allege that any use of the trademark caused confusion.  *See* Dkt. No. 115 at 31.

"'[T]he modern test of infringement is whether the defendant's use [is] likely to cause confusion not just as to source, but also as to sponsorship, affiliation or connection.'"  *Int'l Info. Sys. Sec. Certification Consortium v. Sec. Univ., LLC*, 823 F.3d 153, 161 (2d Cir. 2016) (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:76 (4th ed.)).  To determine whether there is a likelihood of confusion, the Court applies the eight-factor *Polaroid* balancing test.  *Star*

---

media platform can give rise to a viable Lanham Act claim").

*Indus., Inc. v. Bacardi & Co.*, 415 F.3d 373, 384 (2d Cir. 2005) (citing *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961)).

> The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Id.*

"The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (citing *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). "However, claims may be dismissed as a matter of law when a court finds that 'the products or marks are so dissimilar that no question of fact is presented.'" *Lopez v. Nike, Inc.*, No. 20CV905, 2021 WL 128574, *7 (S.D.N.Y. Jan. 14, 2021) (citations omitted). Thus, "Courts are not required to 'slavishly recite' all Polaroid factors in their analyses, but rather 'need only consider sufficient factors to reach the ultimate conclusion as to whether or not there is a likelihood of confusion.'" *Id.* (quoting *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 654 (2d Cir. 1988)).

The Court will not, at this stage, delve into the factual allegations underlying the issue of confusion because Plaintiffs' allegations are sufficient. Plaintiffs allege that Defendants used the name "Adecco," a registered trademark, on its Facebook page. *See* Dkt. No. 97 at ¶ 93. All of the parties are either staffing companies or their employees, and are fiercely competitive within their market. *See id.* at ¶¶ 4, 74, 97. Plaintiff further alleges that actual consumer confusion resulted from Defendants' use of the mark. *See id.* at ¶ 106 ("Around the week of June 16, 2020, certain

36

Adecco associates[10] expressed confusion about whether Adecco and the Adecco Corning Facebook Page were affiliated or associated with 'Fingerlakes Staffing' and/or 'Staffworks Upstate NY & Northern PA."  For instance, during shift check-ins associates would make comments such as 'Hey did you all change your name' and 'I see that you aren't Adecco anymore'").  Finally, Plaintiffs allegations are laced with suggestions of bad faith.  *See id.* at ¶ 98 ("Defendants hijacked Adecco's Adecco Corning Facebook Page to unfairly compete in various ways").

While the Court expresses no opinion as to the likelihood of success on this claim on a fully-briefed motion for summary judgment, the allegations are sufficient to survive a motion to dismiss.  Accordingly, Defendants' motion to dismiss Plaintiffs' trademark infringement claim is denied.

## B.      Motion to Consolidate

Federal Rule of Civil Procedure 42(a) permits consolidation when two or more actions pending before the Court "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  "Consolidation is appropriate in order to serve the interests of 'judicial economy.'"  *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)).  Consolidation under Rule 42(a) is permissive rather than mandatory.  *Johnson*, 899 F.2d at 1284-85.  In considering a motion to consolidate, trial courts retain "broad discretion to determine whether consolidation is appropriate" in a particular case.  *Id.*  The paramount concern, however, is whether expenses can be saved and efficiency accomplished without sacrificing justice.  *Id.* at 1285.  The party seeking consolidation "bear[s] the burden to

---

[10] Although the phrase "associate" makes it seem as if the confusion was on the part of Adecco employees, the term "associate" actually refers to individuals "recruited to work for clients on a direct-hire basis; or hired by Adecco for temporary placement on a contract basis with clients").  *See* Dkt. No. 97 at ¶ 18.  Adecco acts as a "middle-man" to connect associates and businesses.  *See id.*

demonstrate that the actions in question share common issues of law or fact." *Webb v. Goord*, 197 F.R.D. 98, 101 (S.D.N.Y. 2000) (citing *In re Repetitive Stress Injury Litigation*, 11 F.3d 368, 373 (2d Cir. 1993)).

Plaintiffs seek consolidation of this action with *Staffworks, Inc. et al. v. Adecco USA, Inc., et al.*, No. 6:20-CV-747. *See* Dkt. No. 107-1. Plaintiffs argue that both actions involve the same causes of action, defenses, and factual allegations. *See id.* at 4. Defendants agree that the actions are factually related, and their only objection is that Court should rule on the motion to dismiss before consolidating the actions. *See* Dkt. No. 115 at 32-33. Having now decided the motion to dismiss, the Court agrees that the actions should be consolidated.

In the related action, Staffworks, Vitullo, and the Former Employees seek declaratory relief as to whether the restrictive covenants are enforceable. *See* Dkt. No. 1-1. In response, Adecco filed an answer and counterclaims for breach of contract, tortious interference with contract, tortious interference with business relationships, actual and threatened trade secret misappropriate, conversion, and trademark infringement. *See* Dkt. No. 23. The claims and counterclaims all arise from nearly, if not entirely, identical facts as those at issue in the instant case. Accordingly, the Court finds that consolidation of the two actions is appropriate.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion to consolidate is **GRANTED**; and the Court further

**ORDERS** that Defendants' cross-motion to dismiss (Dkt. No. 115) is **DENIED**; and the Court further

**ORDERS** that *Adecco USA, Inc. et al v. Staffworks, Inc. et al*, No. 6:20-cv-744 and *Staffworks, Inc. et al v. Adecco USA, Inc.*, No. 6:20-CV-747 are **CONSOLIDATED**; and the Court further

**ORDERS** that all pleadings and papers shall be filed with *Adecco USA, Inc. et al v. Staffworks, Inc. et al*, No. 6:20-cv-744 and shall henceforth bear the new consolidated caption set forth by the Court on page 1 of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall administratively close *Staffworks, Inc. et al v. Adecco USA, Inc.*, No. 6:20-CV-747. Any documents filed in the administratively closed case in the future shall be automatically stricken; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 23, 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge